SÁNCHEZ v. FAJARDO.

APPEAL from the District Court of Mayagüez.

No. 387.—Decided June 26, 1909.

INJUNCTION—TRIAL—RULES OF THE DISTRICT COURTS.—The fourth section of the district court Rules does not apply to the procedure prescribed in section 10 of the injunction act.

ID.—In the case at bar the court held as proven that at the time the plaintiff acquired the *cuerda* of land, referred to in his complaint, the defendant had

already laid his line in the same place where it was when the hearing of the case was had, and that the cars for the transportation of the sugar-cane to a scale belonging to the defendant passed over said line and that, according to the evidence taken, said track is laid along the public road and not upon private lands belonging to the plaintiff. For this reason the judgment appealed from was affirmed.

The facts are stated in the opinion.

Mr. Martín Travieso for appellant.

Mr. Manuel F. Rossy for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

On December 23, 1908, Alfredo Sánchez filed a complaint in the District Court of Mayagüez against Mateo Fajardo y Cordona, in which he claimed to be the owner and possessor of a rural estate situated in barrio Guanajibo of Mayagüez, consisting of one cuerda of land, with the metes and bounds described, and that the defendant, Mateo Fajardo, was the owner of a tract of land situated to the south of the estate of the plaintiff, upon which the defendant had established a scale and platform for weighing sugar-cane; that the estate of the plaintiff had been fenced by the former owners thereof, and for a number of years there has been a strong barbed wire and staked fence on the southern boundary—that is to say, between the estate of the plaintiff and that of the defendant; that prior to the filing of the complaint the defendant, on a number of occasions, had asked permission to remove the barbed wire fence on the said southern boundary in order to permit his cart and oxen to pass over the estate of the plaintiff, and that such leave or permission had been emphatically refused; that upon permission being denied him, the defendant said that he would tear down the fence and would pass by force if necessary; that on December 14, 1908, the defendant, accompanied by laborers and employes, unlawfully, without the consent of the plaintiff and by means of force, violence and intimidation, and against the right of property and the quiet and peaceable possession of the plaintiff, removed, tore down and destroyed the said fence and entered upon the estate of the plaintiff, passing over said estate with his cars and

animals until he reached a private road called "El Mala-
gueño," which forms the northern boundary of said estate;
that the defendant and his employes were armed and intimi-
dated and threatened the employes of the owner of the estate,
to deter them from preventing the destruction of the fence;
that the fence was replaced and, in addition, a sign, in Spanish
and English, was put up forbidding trespass, and that, on
December 18, the defendant again tore down and destroyed
the said fence and the sign placed there, and again trespassed
and entered upon the estate of the plaintiff in the manner
.above-described; that the defendant threatens to continue
destroying the fence as often as it is put up to prevent his
passage, and that the defendant continued to pass over the
estate of the plaintiff, causing him irreparable loss and dam-
age which cannot be computed or estimated; that a pecuniary
compensation would not furnish an adequate remedy to the
plaintiff, because it would be impossible to determine the
amount thereof and would not prevent the defendant from
continuing to commit the illegal acts above-mentioned, and
that the remedy of indemnity is inadequate because it would
give rise to a multiplicity of litigation; and that the damages
to the plaintiff amount to $2,000. On these grounds he prayed,
in the first place, that a preliminary injunction issue against
the defendant, Mateo Fajardo, to restrain him, either person-
ally or through his agents and employes, during the course of
the action, from destroying the fences of the plaintiff and
from passing over the estate in any manner whatsoever, with-
out the authority of the owner; and that final judgment be
rendered making the preliminary injunction permanent, in
the terms in which it is applied for, and adjudging the de-
fendant to pay damages in the sum of $2,000, in addition tō
the fees of counsel for the plaintiff, and the costs of the action.

The defendant, having been summoned, he appeared in
the district court on December 30, 1908, and contested the
issue of the injunction, to which end he presented a number of

affidavits, including one by the said defendant, Fajardo, himself, to the effect that part of the lands belonging to the former Rochelaise estate had been awarded to Ernesto Forestier, the same adjoining the Estebania estate belonging to Nadal; that these lands are crossed from north to south by the railroad, and from west to east, up to the southern limit of the road, by the Malagueño Road, which has from olden times been a neighborhood road; that all the lands of Forestier, to the east of the railroad, now belong to Wilson, who a few days ago sold a strip of said land, which the complaint says is one *cuerda,* to the plaintiff Sánchez; that the lands of Wilson, where they adjoin the Estebania estate, had not, for a long time before he acquired them from Forestier, been fenced on the side which fronts on and runs along the line of the railway; that along the Malagueño Road, from the lower—that is to say, the western—part, until the railway line is reached, the witness has placed a track to carry the sugarcane which he grows on different lands, some belonging to him and others leased, in cars, which track, being near a spur of the railway which belongs in part to the Eureka Central, turns toward the southern side and enters a tract of land having an area of one *cuerda,* more or less, belonging to the Estebania estate which the Eureka Central has leased for the purpose of weighing said sugar-cane on a scale it has built there and to enable it to transfer the sugar-cane from its own cars to the railroad cars which enter the spur and then take this sugar-cane to the central; that the plaintiff has constructed a fence of rather slender (*pomarrosa*) rails and two barbed wires, starting from a point to the southwest, where the *cuerda* of land purchased from Mr. Wilson joins the Estebania estate, which fence crosses the Malagueño Road, terminating almost within the Malagueño Road itself where it adjoins the railway; that the only purpose of this fence is to prevent the cane cars of the witness, which run along the Malagueño Road at a point below, from entering the scale of the Eureka Central, whence the cane is to be transported to

the railway cars; that the plaintiff has also built another fence on the line of the western boundary of the land purchased of Mr. Wilson, which fence runs along the Malagueño Road, next to a short-cut of this road, to the northeast of the railway, which short cut has been made by the neighbors for the purpose of crossing the railroad more conveniently; that the witness did not ask permission of Mr. Wilson, nor of Bravo, to remove the fence constructed by the plaintiff which obstructed the passage along the Malagueño Road, because he did not have to ask for such permission, inasmuch as the witness or any person desiring to pass along said road has a right to find it free from the obstacles which other persons might wish to place there, which obstacles the defendant had the right to remove to permit his cars to pass, especially, when such obstacles, consisting of the two fences mentioned, had been placed there by the plaintiff solely to prevent the witness from passing with his cars; that for more than four years the witness has been passing over the Malagueño Road to the spur of the railroad without finding obstacles of any kind; and that since last year he has had the track laid along the Malagueño Road as far as the scale of the Eureka Central without having found any obstacle until now; that when plaintiff acquired from Wilson the *cuerda* of land referred to it was not fenced, and he has now fenced it, as also the lines of his boundaries which pass from one side of the road to the other, whereby he has obstructed the passage along said road; consequently the damages of which the plaintiff speaks are imaginary, because the car line for the transportation of the sugar-cane of the defendant does not pass over any private land nor that of the plaintiff, but runs along the Malagueño Road, and upon reaching the railroad, said line turns to the right and enters the scale of the central which is situated on the land leased by said central.

The defendant presented at the hearing some other affidavits, to the admission of all of which the plaintiff objected, basing his objection on the fourth section of the district court

Rules; the court overruled the objection, whereupon the plaintiff took an exception. The plaintiff also objected to the affidavit of Pedro Viadé, which was presented accompanied by a plan which refers to the site and place in question and which shows the course of the Malagueño Road, the lands on either side of it at the place where it reaches the railroad, the situation of the scale to which the defendant referred in his affidavit, and other details relating to the facts involved in these proceedings, said plaintiff basing his opposition on the the allegation that it has not been proved that Viadé had sufficient capacity to certify or swear to a plan like that presented. The court overruled the objection on the ground that in the affidavit of Viadé the latter affirms that he is a practical surveyor, and the plaintiff noted an exception to this ruling of the court.

Then counsel for the plaintiff presented to the court a number of affidavits in support of the facts alleged in the petition and in opposition to those alleged by the defendant in his affidavit, and the court, after having heard the evidence of both parties, held that the ocular inspection requested by the defendant was not necessary, because it had sufficient information to decide the case, and on the same date it rendered a decision holding that the law and the facts were against the petition and denying the preliminary injunction applied for therein. From this decision counsel for the plaintiff took an appeal.

The two exceptions taken at the hearing by counsel for the plaintiff have no foundation whatsoever; the fourth section of the district court Rules does not apply to the procedure prescribed in section 10 of the injunction act; and with respect to the capacity of Viadé to certify to the plan which was attached to his affidavit, we are of the opinion that the statements contained in said affidavit are sufficient to establish such capacity.

It is an incontrovertible fact which the plaintiff has not denied, that the defendant Fajardo, when the plaintiff acquired from Wilson the *cuerda* of land referred to in his complaint, he had already laid his line in the same place where it was when the hearing of this case was had, and that the cars for the transportation of the sugar-cane to the scale which said defendant had placed on lands leased by him and situated to the south of the *cuerda* of land belonging to the plaintiff Sánchez, passed over said line; consequently, at the time the plaintiff acquired the *cuerda* of land, the defendant Fajardo was using the line, and this use involved the exercise of a right of way the title to which, in our opinion, we cannot investigate in these proceedings for the purpose of determining whether or not a preliminary writ of injunction did lie; what is sought to be prevented by a preliminary injunction is not merely an invasion of the estate or right of the plaintiff on the part of the defendant which would result in an irreparable damage, but it appears that the tendency of, and the real object sought by, the injunction, is the destruction of the exercise of a right which is a property right from its nature, and this cannot be obtained by means of an injunction; moreover, the exercise of such right and the claim laid to it by the defendant, which claim is denied by the adverse party, establish, as the question in controversy, a question of titles which must be discussed in the proper action and which, with respect to this case, has the effect of taking away from the right of the plaintiff all the clearness, force and effectiveness required in cases of this character and which are indispensable to warrant the issue of a writ of the nature of that applied for.

On the other hand, entering now upon a consideration of the evidence, for the purpose of deciding the material matter involved in this question, namely, the determination of the course of the Malagüeño Road from west to east, we see from the plan and the affidavits presented by the defendants that the course of said road, until it crosses or intersects the railway, is the same as that of the track laid by the defendant to

transport his sugar-cane to the aforementioned scale—that is to say, that said track is laid along the said road and not upon private lands belonging to the plaintiff; it is true that in the affidavits presented by the plaintiff it is affirmed that the Malagueño Road passes along the northern boundary of the *cuerda* of land belonging to said plaintiff, but if it be considered that, according to the plan presented and the affidavit accompanying it, and according to other affidavits, the said road, at precisely the point where the plaintiff placed the wire fence across the same, a path or short cut starts leading to the northern boundary of the land of the plaintiff, which path or short cut, as may be deduced from the record, was established by the wayfarers for the purpose of reaching the crossing which had been interrupted along the old road when the railroad was laid; so that the affidavits presented by the plaintiff may refer to this cross cut of the Malagueño Road, and in such case there would be no contradiction between the affidavits presented by both sides; but whatever the case may be, we believe that the weight or preponderance of the evidence produced by both sides is pronouncedly in favor of the defendant, and for this reason, as well as for the other reasons we have stated, we are of the opinion that the judgment appealed from should be affirmed, with the costs against the appellant.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and del Toro concurred.